Defendants submit the within Reply to Plaintiff's opposition and in further support of Defendants' motion. Defendants incorporate by reference the legal arguments made in their moving papers. Defendants respectfully request that the Court dismiss the Complaint in its entirety and deny ancillary jurisdiction over the State Court claims.

## PRELIMINARY STATEMENT:

Plaintiffs' opposition is premised on the erroneous supposition that Defendants seek a dispositive pre-Answer merit-based determination when there are "disputed facts." This is simply not true. Dismissal of each of the causes of action is warranted because each fails to state a plausible legally sufficient claim. It does not require the Court to reach a determination of the merits since the inadequacy of the Complaint is clear on its face. Moreover, the Court is not required to accept Plaintiff's "threadbare recitals of a cause of action's elements" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009), or the "labels and conclusions." Repeatedly proclaiming that the Complaint plausibly alleges a cause of action is insufficient to withstand the within motion. The Complaint is unsustainable since it (i) fails to plead a protectable trade secret; and (ii) it fails to sufficiently allege any act of misappropriation.

The alleged a book which Plaintiffs used to record names and contact information "when a customer walked in or made an appointment" does not qualify as a trade secret as a matter of law. Even if it did qualify, dismissal would nevertheless be warranted on the grounds that Plaintiffs failed to sufficiently allege reasonable measures to ensure the book's secrecy. Plaintiffs admit that they it did not require Defendants to sign any confidentiality or noncompete agreement before permitting access to the alleged book. The only allegation is that the book was "stored in the hair salon behind the register" "under lock and key" and that disclosure was "limited," which is insufficient.

Plaintiffs' claims for misappropriation, unfair competition, tortious interference, unjust enrichment, conversion, conspiracy or breach of the faithless servant doctrine must also be dismissed. Neither the allegation that Defendant "placed [customer information] into his own book rather than

1

Prospect Hair's book,"[1] nor the allegation that Defendants "copied the client list in Plaintiff's book"[2] amounts to actionable conduct. Moreover, Defendants were not prohibited, neither by law nor otherwise, from contacting the customers they served at Plaintiff's salon to advise them of their new location and/or otherwise competing with Plaintiffs. Even if actionable misconduct was alleged, dismissal would nevertheless be warranted based on Plaintiffs' failure to sufficiently (i) quantify the loss or otherwise describe the damage allegedly caused by Defendants, (ii) identify a single customer that Defendants' actually "stole," (iii) allege the specifics of who and how Defendants purportedly diverted away from Plaintiffs, and/or (iv) allege how Defendants were "enriched" by something which rightfully belonged to Plaintiffs.

Defendants were *at-will* employees at Plaintiffs' salon, earned a regular salary, and had no contract or special relationship with Plaintiffs. It is a longstanding policy of this Court "not to limit an employee, especially an employee who never had an ownership interest in a business entity, from earning a living or pursuing employment," but Plaintiffs seek to do exactly that. First Empire Sec., Inc. v. Miele, 17 Misc. 3d 1108(A), 851 N.Y.S.2d 57 (Sup. Ct. 2007).

In short, Plaintiffs failed to plausibly allege any cause of action against the Defendants. The Complaint lacks any specific, non-conclusory factual allegations to support that Defendants wrongfully acquired and/or used protected trade secrets, acted unlawfully, otherwise improperly competed with Plaintiffs; and none exist.

## ARGUMENT

**I.     FAILURE TO SUFFICIENTLY IDENTIFY ALLEGED TRADE SECRET**:

Plaintiffs' assertion that the Complaint defines the trade secrets with sufficient specificity to inform Defendants of what it is alleged to have misappropriated i.e., the customer list" and "therefore

---

[1] Complaint, Par. 37.
[2] Complaint, Par. 90.

2

meets its burden" is insufficient.[3] Notably missing are any specific facts or pertinent legal arguments to rebut Defendants' detailed memorandum. Plaintiffs merely recast the inadequate allegations into a memorandum in opposition. Plaintiffs morph their pleading deficiencies into a feigned issue of fact analysis; the pleading failures alone are sufficient to warrant dismissal.

This Court has repeatedly held that "the pleadings standards set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Iqbal, *Supra*., requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value and measures taken to safeguard it to support an inference that the information qualifies as a trade secret." Garvey v. Face of Beauty LLC, 2022 WL 5246665 at *8 (S.D.N.Y. 2022). The Complaint herein does neither. Moreover, Plaintiffs have not identified what facts, disputed or otherwise, may exist to support their claim.

Plaintiffs failed to state how its appointment book, containing customer names and contact information, is unique, either in substance or in compilation. Where, as here, a Plaintiff seeks trade secret protection for a compilation of otherwise publicly available information, "the Plaintiff must demonstrate a 'unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." Intrepid Financial Partners, LLC v. Fernandez, 2020 WL 7774478 (S.D.N.Y 2020). Moreover, this Court has previously rejected Plaintiffs' argument that "the question of whether the complaint alleges a trade secret 'is not ripe for review upon a motion to dismiss' because it is a 'question of fact' that can only be determined by the 'trier of fact.'" Zebra Strategies, Inc. v. Gonzalez-Nazario, 25 Civ. 04146 (S.D.N.Y 2025).

Notably, Plaintiffs do not state what, if any, discovery it needs in order to show that the alleged information is entitled to trade secret protection under the law. Notwithstanding Plaintiffs' attempt to force Defendants to engage in nebulous and meaningless discovery, Courts routinely dismiss

---

[3] Plaintiff's Memorandum in Opposition, pp. 8.

misappropriation claims at the pleading stage where, as here, the information alleged to have been misappropriated does not constitute a trade secret as a matter of law. *See e.g.*, Zirvi v. Flatley, 433 F.Supp.3d 448 (S.D.N.Y 2020) (nothing that, "in some situations whether information is a trade secret may be evident from the pleadings alone" and observing that "courts dismiss trade secret claims when the alleged trade secrets are not, in fact, secret"). That determination is appropriate in this case.

Plaintiffs' reliance on Catalyst Advisors, L.P. v. Catalyst Advisors Investors Global Inc., 602 F.Supp.3d 663 (S.D.N.Y 2022) is misplaced. In finding that the Complaint sufficiently alleged trade secrets, the Court specifically distinguished customer lists that, like here, "are little more than a compilation of publicly available information,' such as contact information" from customers that "are not known" or "discoverable only by extraordinary efforts…" "years of effort and advertising effected by the expenditure of substantial time and money." Id. Similarly, the Complaint here cannot be compared to the Complaint in Iacovacci v. Brevet Holdings, LLC, 437 F.Supp.3d 367 (2020), where the alleged trade secrets included "(1) non-public source information for over 2,000 clients; (2) business-specific non-disclosure agreements; and (3) certain specifically identified documents…" The Complaint in Rocket Pharmaceuticals, Inc. v. Lexeo Therapeutics, Inc., 2024 WL 3835264 (S.D.N.Y 2022) is also inapposite since, unlike here, it identified the specific documents and train secrets contained therein.

Plaintiffs also improperly rely on Sapir v. Rosen, 2021 WL 4482277 (S.D.N.Y 2021) to argue that "generality proves fatal only when the allegations fail to provide any details sufficient to define the trade secrets at issue," despite that not being the holding in that case. The Court held that the Complaint fails to plead trade secrets with sufficient specificity, noting that it was "unable to infer either the existence or the protectability of any trade secret." Id. at 7. It also noted other deficiencies warranting dismissal, including: (i) "laundry list of documents that *might* be trade secrets" (ii) fail to plead which categories of documents are "trade secrets- as opposed to mere confidential or proprietary information" (3) does not allege that the documents at issue, which are common to many, are unique. Id. As noted in Sapir, *Supra*., the specificity requirement exists "both so that defendants are put on notice of what items

4

they allegedly misappropriated and so that a court can ascertain the protectability of the information at issue." Here, like in Sapir, none of the Complaint allegations meet this standard.

## II.    CUSTOMER LIST HEREIN NOT A TRADE SECRET:

Plaintiffs ignore applicable statutory and case law and argue that "the book" is a trade secret. However, neither the information contained in the book nor the Complaint qualifies legally or factually as a trade secret. Courts consistently hold that customer lists "are generally not considered confidential unless information contained therein is not known in the trade and discoverable only through extraordinary efforts." Battenkill Veterinary Equine v. Cangelosi, 1 A.D.3d 856, 858 (3rd Dept. 2003).

"Whether a customer list constitutes a trade secret may depend on whether customers are readily ascertainable outside the employer's business." Superb Motors Inc. v. Deo, 776 F. Supp. 3d 21, 79–80 (E.D.N.Y 2025). This requires that plaintiffs plead that the customer list contains information that is not readily available (i.e., individualized customer preferences). AutoExpo Ent. Inc. v. Elyahou, 2025 WL 2637493 (E.D.N.Y 2025).

Plaintiffs here allege that Prospect's "carefully curated customer preferences and customer relations are vital to its business, possession of that years–long developed, and curated information provides Prospect a unique competitive advantage in the barbering industry."[4] It is entirely unclear how this relates to the alleged trade secrets in the "book". Moreover, Plaintiffs failed to state how their alleged "book" containing customer names and contact information is unique and unlike similar books maintained by virtually every hair salon. Even a "customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret… provided the information it contains is not otherwise readily available." N. Atl. Instruments v. Haber, 188 F.3d 38 (2 Cir. 1999).

This Court has dismissed similar Complaints for failing to adequately identify the trade secret and its components. *See e.g.*, Hayden v. International Business Machines Corp., 2025 WL 1697021, No.

---

[4] Plaintiff's Memorandum in Opposition, pp. 22.

5

21-CV-2485 (S.D.N.Y 2025); Superb Motors Inc. v. Deo, *Supra*. at 79–80. Accordingly, the applicable case law supports dismissal of Plaintiffs' Complaint.

### III. FAILURE TO SUFFICIENTLY PLEAD STEPS TAKEN TO PROTECT PURPORTED SECRECY OR THE VALUE OF ALLEGED TRADE SECRETS:

Plaintiffs' DTSA claim should be dismissed because (a) Plaintiffs did not employ reasonable measures to protect its information, (b) failed to allege sufficient facts to establish that they took reasonable steps to protect the purported trade secrets or (c) that the information Defendants allegedly absconded was proprietary in nature. Plaintiffs' references to specific paragraphs of the Complaint are purely superficial as they fail to address many obvious issues that render their purported trade secret claims unsustainable. (i.e. how is it that the customer information is not readily ascertainable by searching the internet or asking the customers themselves?). Although no single measure is dispositive universally in DTSA cases, and despite Plaintiffs allegation that the information for which it granted Defendants access was distributed on a need-to-know basis, the failure to sufficiently plead that any reasonable measures were employed to protect it compels dismissal.

"Reasonable measures" have included: (1) nondisclosure/confidentiality agreements (Mason v. Amtrust Fin. Servs., Inc., 848 F. App'x 447,450 (2d Cir. 2021); Mintz v. Mktg. Cohorts, LLC, 2019 WL 3337896, at *6 (E.D.N.Y 2019)); (2) marking confidential and trade secret documents (*see*, Mason, 848 F. App'x 447); (3) restricting disclosure or access based on need-to-know (Charles Ramsey Co., Inc. v. Fabtech-NY LLC, 2020 WL 352614, at *23 (N.D.N.Y 2020)); (4) employee training regarding data security and confidentiality obligations (Zabit v Brandometry, LLC, 540 F Supp 3d 412, 425 (S.D.N.Y. 2021)); and (5) contractual obligations on employees, including post-employment obligations (Harley Mar. NY, Inc. v. Moore, 2024 WL 532496, at *4 (N.D.N.Y 2024)). Defendants were in their own business for five years before Plaintiffs took any action, including the filing of the within Complaint.

The Complaint here only provides a restatement of the black-letter elements of a DTSA claim and conclusory allegations such as "restricting access to only those who are in managerial positions and

6

who are required to maintain confidentiality of the documents" without any indication as to how or why they were required to maintain secrecy.[5] Indeed, Plaintiffs do not allege that Defendants received verbal instruction regarding the confidential nature of the book. Nor does the Complaint allege that Defendants were subject to a written confidentiality agreement or any formal agreements or covenants to that effect. These vague allegations are exacerbated by material inconsistencies and contradictions Plaintiffs allege that (a) "only Johnny had access to the book, which was hidden;"[6] (b) that "no permission was given to Defendants to have access to any of Plaintiff's customer lists…;"[7] and (c) that "Defendants were prohibited by law from obtaining confidential information and trade secrets of Prospect Hair."[8] However, Plaintiffs admit that (a) Defendant, "Paul was allowed to access the book"[9] and allege that (b) "Prospect Hair made and makes reasonable efforts to maintain the secrecy of this information including limiting its disclosure to Paul, its manager, and Johnny, each of whom are entrusted to act in the best interest of Prospect Hair."[10] In short, the Complaint is beyond remediation.

## IV. CUSTOMER LIST NOT "A SECRET":

It is axiomatic that "courts dismiss claims involving trade secrets where they are not actually secret." *See*, Garvey v. Face of Beauty LLC, *Supra*. The reason is that, since secrecy is the most important element of trade secret analysis, unprotected disclosure of the information alleged to be a secret will terminate that element and forfeit its trade secret status. Thus, Courts uniformly look to confidentiality obligations at the motion to dismiss stage as dispositive indicators of whether protectable "secrets" are at issue. *See e.g.*, Catalyst Advisors, LP v. Catalyst Advisors Invs. Glob. Inc., *Supra*. at *21. Plaintiff has not sufficiently pled the secrecy requirement.

---

[5] Complaint, Par. 33.
[6] Complaint, Par. 31.
[7] Complaint, Par. 50.
[8] Complaint, Par. 57.
[9] Complaint, Par. 32.
[10] Complaint, Par. 56.

7

Nor were Defendants subject to non-disclosure agreements. The DTSA claim in Pauwels v. Deloitte LLP, was dismissed in spite of the fact that the plaintiff in that case informed agents of the defendant that the alleged trade secrets were proprietary and confidential because the court determined that a written agreement memorializing this understanding was still required at minimum to consider the proprietary information in that case a trade secret. 83 F .4th 171, 179 (2d Cir. 2023). In Mintz v. Mktg. Cohorts, LLC, *Supra*. at *6, a DTSA claim was dismissed because plaintiff "did not require defendants to sign a non-disclosure agreement nor any sort of covenant to protect the passwords." Indeed, the existence of some sort of confidentiality agreement is paramount in maintaining trade secret status. Id.

"Courts do not automatically qualify non-disclosure agreements standing alone as reasonable protection against misappropriation and would rather see NDAs coupled with password protections, employee policies detailing the use of specific information, or confidentiality amendments to licenses." Superb Motors Inc. v. Deo, *Supra*. Furthermore, "if an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." Id. None of these safeguards were plead or present in this case.

Plaintiffs' repetition of the inadequate allegations in the Complaint fails to address the deficiencies raised in Defendants' moving memorandum and is insufficient to withstand the within motion.

Plaintiff has not alleged that it marked the alleged book, which it allowed at least one of the Defendants to see, as confidential or trade secrets. *See*, Mason, *Supra*. *See also*, Hair Say, Ltd. v. Salon Opus, Inc., 6 Misc.3d 1041(A) (Sup. Ct. Nassau Cty. 2005). Plaintiff also failed to allege that it provided employee training regarding data security and confidentiality obligations or that it has post-employment confidentiality agreements with Defendants. Defendants here were at-will employees of Plaintiffs' salon, who earned a regular salary, had no contract or special relationship with Plaintiffs.

8

As the Court explained in Zabit v. Brandometry, LLC, a duty of loyalty "does not somehow transform this freely-shared information into a secret. To hold otherwise would risk expanding the limited category of 'trade secrets' to cover any confidential information. But it is well-settled that trade secrets 'are a narrow category of confidential information." *Supra*. at 426-27 (finding plaintiff failed to meet "reasonable measures" requirement since it allowed access without confidentiality agreements or instructions to keep the information secret). Thus, "merely having a duty of loyalty does not qualify," as a reasonable secrecy measure." Id. *See also e.g.*, Harley Mar. NY, Inc., *Supra*.

Similarly, in Turret Labs USA, Inc. v. CargoSpring, LLC, the District Court found that because the trade secret consisted of "the product's functionality - functionality is made apparent to all users of the program, the 'reasonable measures' analysis focuses less on physical security and more on the questions of access, i.e., who is given access, under what circumstances, and under what confidentiality agreements. No. 19-cv-793EKRML (E.D.N.Y. 2021) aff'd, No. 21-952 (2d Cir. 2022). Importantly, because every customer would "be privy to the functions that [plaintiff] calls a trade secret," the Court observed that it was critical that Plaintiff allege that such customers were required to keep such functionality a secret. Id. By failing to allege specific provisions…imposing confidentiality obligations .. or any other facts requiring [them] to agree to non-disclosure of the alleged trade secret, the Court held that plaintiffs failed to allege "reasonable measures" to survive a motion to dismiss. Id. The Second Circuit affirmed the dismissal, finding that plaintiffs' failure to execute nondisclosure agreements was fatal to its trade secret misappropriation claim. Id. at 7.

V. **PLAINTIFFS FAILED TO ALLEGE DEFENDANTS MISAPPROPRIATED A TRADE SECRET**:

Plaintiffs common law and DTSA misappropriation claims must be dismissed because Plaintiffs have not sufficiently alleged that Defendants violated any agreement, confidential relationship, or duty. Plaintiffs attempt to establish that its customer information was acquired by "improper means" because Defendants began working at a nearby salon after their resignation. However, Plaintiffs cannot escape

9

the fact that they did not employ precautionary measures to protect the information or that they failed to sufficiently plead that Defendants owed Plaintiffs any duty to protect the information.

For misappropriation, Plaintiffs were required to allege that "defendants used the plaintiff's confidential information for the purpose of securing a competitive advantage." Reed Cont. Data Inc. v. McGraw-Hill Companies, Inc., 745 F.Supp.2d 343, 352 (S.D.N.Y. 2010).

Similarly, the Complaint fails to allege any facts that would support a *reasonable* inference that Defendants used or disclosed any purported trade secret information to divert business away from Plaintiffs or for any other impermissible purpose. Where, as here, "the Court can infer no more than the *mere possibility* of misconduct from the factual averments - in other words, if the well-led allegations of the complaint have not 'nudged [plaintiff's] claims across the lien from conceivable to plausible' - dismissal is appropriate." Elsevier Inc. v. Doctor Evidence, LLC, 2018 WL 557906, at *4 (S.D.N.Y 2018). Plaintiffs were also required to allege that "each defendant individually misappropriated at least one trade secret." Hedgeye Risk Mgmt., LLC v. Dale, 2023 WL 6386845, at *7 (S.D.N.Y 2023).

Plaintiffs gave Defendants full access to the alleged book and provided no guidance nor restriction regarding their use. Plaintiffs do not plead at any point that Defendants were ever under any obligation to protect the confidentiality of the alleged book. To support their misappropriation claim, Plaintiffs rely exclusively on cases in which either global confidentiality policies were in place, the employee left with information to use to work for a competitor, or where written confidentiality agreements were in place. No such facts are present here. Regardless, Plaintiffs provide no further basis for the assertion that Defendants employed improper means, all the while Plaintiffs granted Defendants unfettered access to the book that Plaintiffs claim Defendants improperly accessed.

## VI. THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' COMMON LAW AND STATE CLAIMS:

If the Court dismisses Plaintiffs' cause of action under the DTSA, then the Court should decline supplemental jurisdiction and dismiss the State Court claims. Indeed, in the Second Circuit, the "general

10

rule" is that district courts "should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." Geminatio, Inc. v. Hustad, 2026 WL 194298 (N.D.N.Y. Jan. 26, 2026). Courts may decline supplemental jurisdiction even where State law claims form part of the 'same case or controversy' if the state law claims 'substantially predominate over the claim… over which the district court has original jurisdiction [or] the district court has dismissed all claims over which it has original jurisdiction." Id. See also, 28 U.S.C. 1367(c).

Plaintiffs argue that federal jurisdiction exists by virtue of their DTSA claim. However, Plaintiffs do not contest that, in the event that their DTSA claims are dismissed, the Court should decline supplemental jurisdiction over the state and common law claims. Moreover, since "this case is in its early stages and discovery has not yet begun…, any concerns about judicial economy, convenience, and fairness are limited." Geminatio, Inc., 2026 WL at *6.

## VII. PLAINTIFFS' UNFAIR COMPETITION CLAIM REQUIRES DISMISSAL:

Plaintiffs' claim for unfair competition requires dismissal because Plaintiffs have not and cannot sufficiently allege or establish bad faith. Bytemark, inc. v. Xerox Corp., 342 F.Supp.3d 496, 505 (S.D.N.Y. 2018). To act in "bad faith," one must enjoy some "commercial advantage which belonged *exclusively* to another." LoPresti v. Mass Mut. Life Ins. Co., 20 A.D.3d 474, 476 (2nd Dept. 2006).

The Complaint fails to allege any facts that would support a *reasonable* inference that Defendants used or disclosed any purported trade secret information to divert business away from Plaintiffs or for any other impermissible purpose. Where, as here, "the Court can infer no more than the *mere possibility* of misconduct from the factual averments - in other words, if the well-led allegations of the complaint have not 'nudged [plaintiff's] claims across the lien from conceivable to plausible' - dismissal is appropriate." Elsevier Inc. v. Doctor Evidence, LLC, *Supra*. at *4.

## VIII. TORTIOUS INTERFERENCE CLAIM MUST BE DISMISSED:

The Complaint fails to support the information's confidentiality sufficiently to sustain Plaintiff's tortious interference claims. Fatally, it fails to identify the customers that had contracts with Plaintiffs

11

who were steered to Defendants' salon. City Callibration Centers Inc. v. Heath Consultants, Inc., 727 F.Supp.3d 332 (E.D.N.Y. 2024) ("finding the weight of authority 'required a plaintiff to identify the potential customers at issue when asserting a cause of action for interference with prospective economic advantage'"). District Courts routinely dismiss claims for tortious interference where they fail to identify the relevant third party. *See e.g.*, Bullion Exchange LLC v. Bullion Shark, LLC, 2025 WL 2933204, at *12 (E.D.N.Y. May 15, 2025). The Complaint in this case fails to support the information's confidentiality sufficiently to sustain Plaintiff's tortious interference claims.

## IX. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY:

There is no factual predicate for Plaintiffs' claim that Defendants owed Plaintiffs a fiduciary duty.. Defendants were merely employees at-will; without contractual obligations and certainly no fiduciary responsibility to Prospect Hair. Furthermore, the law is clear that an employee does not breach any fiduciary duty or duty of loyalty to her employer if he "did not misappropriate any confidential information, did not improperly solicit customers, "and there was no evidence that [he] competed with [his employer] while still employed by it." ICD Grp., Inc. v. Proaroma Industria Y Comercio, Ltd., 188 A.D.2d 357, 358 (1st Dept. 1992).

Similarly, a claim for breach of fiduciary duty will fail where, as here, is premised upon the same grounds as "a claim for breach of contract… " Goss v. E.S.I. Cases & Accessories, Inc., 2020 WL 5817163, *5 (S.D.N.Y. 2020). Here, Plaintiff breach of fiduciary duty claims are not based on any independent duty allegedly owed by Defendants.

## X. CLAIMS FOR UNFAIR COMPETITION, TORTIOUS INTERFERENCE AND UNJUST ENRICHMENT MUST BE DISMISSED AS DUPLICATIVE:

Plaintiff's claims for Unfair Competition, Unjust Enrichment, and Breach of Fiduciary Duty, are based on the same conduct as the misappropriation claim and are therefore duplicative and must be dismissed.

The decisional law is clear that, "duplicative claims of unjust enrichment, where the same factual allegations are pled for other … tort claims, should be dismissed." Bullion Exchange LLC v. Bullion Shark, LLC, *Supra*. at *12. *See also*, Abernathy-Thomas Eng'g Co. v. Pall Corp., 103 F.Supp.2d 582, 599-600 (E.D.N.Y. 2000). "Even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how the unjust enrichment claim is not merely duplicative of the other causes of action." Nelson v. Miller Coors, LLC, 246 F.Supp.3d 666, 679 (E.D.N.Y 2017).

Finally, Plaintiffs' unfair competition claim is based on the same underlying conduct as their claim for misappropriation: Plaintiffs' belief that Defendants solicited their customers and diverted business to their new salon.[11] York Courts routinely apply the same standards to unfair competition claims premised on misappropriation of confidential information as to claims of misappropriation of trade secrets. *See e.g.*, Uni-Sys., LLC v. United States Tennis Ass'n, Inc., 350 F.Supp.3d 143, 179 (E.D.N.Y. 2018). Here, even when viewed in the most charitable light, Plaintiffs' unfair competition claim is inarguably duplicative of its DTSA and common law misappropriation claims and must therefore be dismissed.

Based on the foregoing, dismissal of Plaintiffs' claims for Unfair Competition, Unjust Enrichment, and Breach of Fiduciary Duty as duplicative is required.

### XI.     CLAIM FOR CONVERSION  REQUIRES DISMISSAL:

Plaintiffs' claim for conversion fails as a matter of law. More specifically, plaintiffs fail to allege that they were deprived of any customer information or that it made unanswered demands for the return of same. These are fatal defects since plaintiffs cannot successfully assert a claim for conversion without

---

[11] Additionally, Plaintiff's failure to allege that Defendants benefitted directly from the conduct on which the unjust enrichment claim is based or any "specific and direct benefit moving from the plaintiff to the defendant," requires dismissal of an unjust enrichment claim. Brenner v. Brenner, 821 F.Supp.2d 533, 540-41 (E.D.N.Y. 2011). The vague, indirect benefit of a "competitive advantage" is insufficient to support a claim for unjust enrichment. *See e.g.*, Laydon v. Mizuho Bank, Ltd., 2014 WL 1280464, *43 (S.D.N.Y. 2014) (holding that "conclusory assertions that [defendants] financially benefited from" alleged wrongful conduct fail to sustain unjust enrichment claim).

13

showing that they have been actually deprived of physical, tangible property. *See e.g.*, Rao v. Verde, 222 A.D.2d 569 (2nd Dept. 1995); Hair Say, Ltd. v. Salon Opus, Inc., *Supra*. (dismissing the conversion claim because plaintiff 'retained possession of the customer list").

Additionally, this Court has held that "cases of 'pure copying' do not satisfy the required elements of conversion." Turret Labs USA, Inc. v. CargoSpring, LLC, *Supra*. (dismissing conversion claim since plaintiff alleged "only that defendants accessed and copied its trade secrets").

In dismissing the conversion claim in 24 Seven, Inc. v. O'Grady, 2016 NY Slip Op 31076(U) (Sup. Ct. NY Cty. 2016), the Court noted defendants demonstrated that they "did not deprive plaintiff of any tangible property…, that her access to plaintiff's database was terminated following her departure, and that to the extent that she retained information about candidates' or clients' identities, it was not property that may be the subject of a claim of conversion.

Moreover, the Complaint in this case fails to allege any factual information explaining each Defendants involvement in the alleged conversion, which warrants dismissal. "A plaintiff must properly allege that defendants "actively participated in a fraud or conversion." FDIC v. Concordia, 2024 WL 4362783 at *4 (S.D.N.Y. Sept. 30, 2024).

## XII. DISMISSAL OF THE COMPLAINT IS WARRANTED UNDER RULE 12(B)(6):

Contrary to the Plaintiffs' opposition, Defendants are not asking the Court to make factual determinations or weigh evidence. Defendants motion to dismiss is based on the lack of sufficient non-conclusory factual detail to support any plausible claim. Iqbal, 556 U.S. at 678-79 (conclusory allegations "are not entitled to the assumption of truth" and are not enough to state a plausible claim). Plaintiffs were required to plead factual allegations that are detailed and sufficient "to raise a right to relief above the speculative level on the assumption that all of the allegations in the Complaint are true." Twombly, 550 U.S. at 545.

Plaintiffs' "threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. in evaluating the sufficiency of Plaintiffs'

14

Complaint, the Court must first "disregard all conclusory statements in the Complaint" and then "determine if the complaint contains 'sufficient factual matter' which, when accepted as true, states a claim that is 'plausible on its face.'" Id. at 678-9. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

### XIII. **LEAVE TO AMEND SHOULD BE DENIED**:

Although, generally, leave to amend should be "freely given," "this principle is not without limits" and "there is no rule that every request to amend must be granted." May Flower Int'l, Inc. v. Amoy Food Ltd., 2025 WL 3089291, at *8 (E.D.N.Y 2025). "A court may deny a plaintiff's request to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" Zappia v. Movant Scis. Ltd., 2025 WL 338351, at *4 (2d Cir. 2025). "Where a party has failed to specify "how amendment would cure the pleading deficiencies," leave need not be given." Id..

Plaintiffs argue that if the Court finds "any deficiency in the Complaint," dismissal should be without prejudice and with leave to amend.[12] (Opposition, Pp. 20). However, Plaintiffs did not submit a proposed Amended Complaint, have not provided the Court with any new facts that would be included upon repleading, and failed to specify how they would cure the pleading deficiencies in the Complaint .

Plaintiffs' reliance on the Court's decision in Porat v. Lincoln Towers Cmty. Ass'n, is unavailing. Contrary to Plaintiffs contention, the Court did not reverse denial of leave to amend, but rather affirmed the dismissal with prejudice and held that, "especially given that plaintiff's counsel did not advise the district court how the complaint's defects would be cured, upon all the facts of this case we find no abuse of discretion." 464 F.3d 274, 276 (2d Cir. 2006). In doing so, the Court noted that a "plaintiff is not necessarily entitled to a remand for repleading whenever he has indicated a desire to amend his complaint, notwithstanding the failure of plaintiff's counsel to make a showing that the complaint's defects can be cured." Id.

---

[12] Plaintiff's Memorandum in Opposition, pp. 20

15

Denial of leave to amend was also affirmed in Solomon v. Flipps Media, Inc., noting that although plaintiff was served with "a premotion letter advising her of the deficiencies in the Complaint, she waited until her opposition to the motion to dismiss to request leave" and that the request was made at the end of plaintiff's brief, which stated "if the Court grants defendant's motion in any respect, [plaintiff] should be granted leave to amend the Complaint to remedy any perceived deficiencies." 136 F.4th 41, 55 (2d Cir. 2025). The Court further noted that, like here, plaintiff "has had more than ample opportunity to address the deficiencies identified [in the Complaint], but has not identified any proposed amendments." Id.

Here, like in Solomon, *Supra*., and in Porat, *Supra*., plaintiffs were advised of the deficiencies in their Complaint upon receipt of Defendants' pre-motion letter dated August 14, 2025. Plaintiffs were advised of these deficiencies for a second time at the pre-motion conference held on November 12, 2025. Nevertheless, Plaintiffs waited until the deadline to submit their opposition to the within motion to request leave to amend, make the request as an afterthought at the end of their memorandum in opposition, and did not submit a proposed Amended Complaint or otherwise indicate how an amendment would cure the Complaint's deficiencies. As such, leave to amend should be denied and the Complaint should be dismissed with prejudice.

## XIV.  CONCLUSION:

It is clear that the Complaint allegations are insufficient to state a claim under the DTSA and the should therefore be dismissed. Dismissal of Plaintiffs' state and common law claims is also warranted based on Plaintiffs' failure to set forth sufficient supporting factual allegations in support thereof. Alternatively, and at the very least, this Court should dismiss the Plaintiffs' state and common law claims without prejudice and allow Plaintiffs to re-file in the appropriate State Court.

For the foregoing reasons, Defendants respectfully request that this Court grant the within motion to dismiss Plaintiff's Complaint against them in its entirety and with prejudice.

Dated: February 26, 2026
      New York, New York

                                Respectfully submitted,

                                The Lucciola Law Group, P.C.
                                55 Broadway, 23rd Floor
                                New York, New York 10006
                                Tel: (212) 482-4400

                By:     /s/ **Gerard Lucciola**
                                **Gerard A. Lucciola (GL4147)**
                                glucciola@lucciolalaw.com
                                *Attorneys for Defendants*
                                Haircraft By Paul And Ben Inc.,
                                Ng Yuk-Po, Taihui Shib, and
                                Sarah Yuk Mei Ng,